IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAURICE J MCDONALD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. <u>3:12-cv-01183-JPG-PMF</u> |
| | ) |
| LUCAS T MAUE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

     Before the Court is Plaintiff Maurice J McDonald's request for injunctive relief contained in his (Doc. 1) complaint. McDonald is presently incarcerated at Menard Correctional Center ("Menard"), a prison under the authority of the Illinois Department of Corrections ("IDOC"). An evidentiary hearing was held on January 3, 2012. McDonald attended the hearing by video-conference and testified. Nikki Malley, Healthcare Administrator at Menard, also testified for the Defendants. For the following reasons, it is recommended that McDonald's requests for injunctive relief be denied.

     On October 9, 2012, McDonald underwent a surgical angioplasty procedure at Memorial Hospital of Carbondale ("MHC"), in which surgeons implanted an angio-seal in his femoral artery. He alleges that MHC surgeons issued a set of restrictions on his movement following the procedure. According to McDonald, the restrictions were to be followed from the date of the angioplasty and last for a period of 90 days. He alleges that the 90-day restrictions included "no walking for long distances and no climbing stairs, and was to have the use of a wheelchair (Doc. 1, pp. 11, 16, 29)." Doc. 7 at 2. McDonald alleges the restrictions were necessary because he

1

could suffer fatal bleeding if the angio-seal were to become dislodged.  McDonald complains that, despite the 90-day restrictions and other restrictions placed upon his movement in July 2012, Menard prison officials continually force him to violate the restrictions, placing him imminent danger of physical harm or death.

On December 3, 2012, the Court screened McDonald's complaint pursuant to its authority in 28 U.S.C. § 1915A. *See* Doc. 7.  The Court ruled that McDonald "articulated a colorable federal cause of action against Defendants Shepard and Veath for deliberate indifference to medical needs (Count 1), for ignoring and failing to implement Plaintiff's post-surgical orders after his October 2012 surgeries." *Id*. at 5.  Additionally, Defendants Atchinson (the Menard Warden) and Godinez (the Director of the Illinois Department of Corrections) were not dismissed as Defendants because McDonald was seeking injunctive relief. *See id*. (citing *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out)).

McDonald seeks injunctive relief to force Menard prison officials to comply with the 90-day restrictions placed upon his movement.  "The purpose of preliminary injunctive relief is 'to minimize the hardship to the parties pending the ultimate resolution of the lawsuit.' " *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc*., 149 F.3d 722, 726 (7th Cir. 1998) (quoting *Faheem–El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988)).  "In this circuit, the standards for a TRO and a preliminary injunction are functionally identical." *Crue v. Aiken*, 137 F. Supp. 2d 1076, 1082-83 (C.D. Ill. 2001) (citation omitted).  "In order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive

relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004) (citing *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1067 (7th Cir.1994)). "If the movant can meet this threshold burden, then the inquiry becomes a sliding scale analysis where these factors are weighed against one another." *Id*. (citations and internal quotations omitted). With respect to preliminary injunctive relief regarding prison conditions, federal statutory law provides that such relief must be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, the Court must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief …" *Id*.

    a. **Likelihood of Success on the Merits**

In order to demonstrate a likelihood of success on the merits of his § 1983 claim, McDonald must demonstrate that the Defendants have acted with deliberate indifference to his serious medical needs. This Circuit has summarized the applicable for this type of claim as follows:

> A successful deliberate indifference claim is comprised of both an objective and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). First, an inmate must demonstrate that, objectively, the deprivation he suffered was "sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir.2002). In the medical care context, this objective element is satisfied when an inmate demonstrates that his medical need itself was sufficiently serious. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir.1997). A medical need is considered sufficiently serious if the inmate's condition "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir.2005). Notably, "[a] medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction

of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir.2010). Second, an inmate must establish that prison officials acted with a " 'sufficiently culpable state of mind' " to support liability under § 1983. *Greeno*, 414 F.3d at 653 (quoting *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970). Although negligence or inadvertence will not support a deliberate indifference claim, an inmate need not establish that prison officials actually intended harm to befall him from the failure to provide adequate care. *Walker*, 293 F.3d at 1037. "[I]t is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653.

*Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). With regard to the objective component, McDonald should not have trouble demonstrating that the risk of an angio-seal rupture is a sufficiently serious condition.

However, McDonald will have significantly more difficulty demonstrating the subjective component; that the Defendants acted with sufficiently culpable state of mind. McDonald testified that sum and substance of his remaining complaint and request for injunctive relief is directly related to Menard prison officials' refusal to allow him to abide by the 90-day restrictions given to him by treating physicians at MHC. He testified that MHC doctors gave him and Dr, Shepherd a set of instructions that contained restrictions on McDonald's movement for 90 days. McDonald testified that he no longer has a copy of these instructions because he gave his set of instructions to prison officials at Menard. Nikki Malley, Healthcare Administrator at Menard, testified that Menard's records do not reflect the possession of any such 90-day restrictions. She testified that McDonald's medical records contained a physician's note from October 9, 2012 stating that McDonald was to refrain from lifting for 5 days and to walk on level surfaces for two days. Thus, it would appear there is some disagreement as to whether Menard prison officials ever received the 90-day instructions from MHC.

At the conclusion of the evidentiary hearing, Counsel for Defendants was directed to obtain McDonald's October 9, 2012 post-operation directives from MHC as soon as practicable.

*See* Doc. 27. Defendant was then directed inform the Court if they were able to obtain any additional information pertaining to the 90-day restrictions discussed by McDonald in his testimony. *See id*. If the 90-day post-operative instructions are found to exist, McDonald will have a less difficult time proving that the Defendants acted with a sufficiently culpable state of mind. If the post-operative directives are found to be non-existent, McDonald will likely be unable to demonstrate that the Defendants acted with the required state of mind. Because the Court cannot make this conclusion at this time, it will turn to whether or not McDonald will suffer irreparable harm if the injunction is not granted.

### b. Irreparable Harm

Even if McDonald could demonstrate a likelihood of success on the merits, he will have much more difficulty demonstrating that, absent injunctive relief, he will suffer irreparable harm. This is mainly due to the fact the 90-day restrictions that McDonald claims to exist are due to expire on January 9, 2013 (90 days from October 9, 2012). If the undersigned were to recommend any type of injunctive relief in this case, it would have been narrowly-tailored to force Menard prison officials to follow the MHC 90-day post-operation restrictions. Because these restrictions (if they indeed exist) are due to expire in short order, such a recommendation would be futile. *See* 28 U.S.C. § 636(b) (providing by statute for a 14-day objections period to a Report and Recommendation concerning injunctive relief).

McDonald testified that even after the 90-day restrictions expire, it is still possible for him to suffer harm. However, more is needed than the mere possibility of injury. "For preliminary relief to be granted, the irreparable harm must … be likely." *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 788 (7th Cir. 2011) *cert. denied*, 132 S. Ct. 1635, 182 L. Ed. 2d 246 (2012). Common sense would dictate that McDonald's irreparable harm would have

most likely to occur in the period shortly after he underwent his angioplasty procedure, with the risk of harm gradually lessening as time goes on. Indeed, Malley testified that McDonald's medical records included a physician's note that would have restricted McDonald's movement for a period of about a week after his angioplasty. Accordingly, the risk of irreparable harm to McDonald would have been likely only in that short timeframe following the surgery. Three months have now passed since McDonald underwent the angioplasty on October 9, 2012.

Even if the 90-day restrictions in question are found to exist, McDonald would be unable to demonstrate that rupture is more than just a possibility at this time. McDonald has not presented clear and persuasive evidence suggesting otherwise. His request for injunctive relief should be denied. *See Chicago Dist. Council of Carpenters Pension Fund v. K & I Constr., Inc.*, 270 F.3d 1060, 1064 (7th Cir. 2001) ("A preliminary injunction is an extraordinary remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.").

### CONCLUSION AND RECOMMENDATION

Because McDonald cannot demonstrate the required threshold showing for injunctive relief, the Court's analysis need not proceed any further.

For the forgoing reasons, it is recommended that McDonald's request for injunctive relief be denied.

SO RECOMMENDED.

DATED: January 10, 2013.

                                              *s/ Philip M. Frazier*
                                              PHILIP M. FRAZIER
                                              UNITED STATES MAGISTRATE JUDGE